UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────────

MARION MCSEEN EVERETT,

               Plaintiff,        15-CV-6215

      -v-                DECISION
                         AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

               Defendant.

─────────────────────────────────────────

     Marion Mcseen Everett("plaintiff") brings this action under Title II of the Social Security Act (the "SSA"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her application for disability insurance benefits ("DIB").

     Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

<u>**PROCEDURAL HISTORY**</u>

     On June 30, 2011, plaintiff filed an application for DIB alleging disability as of March 11, 2011 due to carpal tunnel syndrome and problems with her hands. Administrative Transcript ("T.") 209, 212. Following an initial denial of her application on September 23, 2011, plaintiff testified at a hearing held, at her request, on July 19, 2013 before administrative law judge ("ALJ")

Brian Kane. T. 9-26, 91-96, 97-105.  The ALJ issued an unfavorable decision on September 24, 2013, and a request for review was denied by the Appeals Council on February 10, 2015. T. 1-4.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2015; (2) plaintiff had not engaged in substantial gainful activity since March 11, 2011; (3) her cervical problems with spinal stenosis of the cervical region, carpal tunnel syndrome, post-surgical treatments, and obesity were severe impairments; (3) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526); and (4) plaintiff has the residual functional ("RFC") capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: lift and/or carry up to ten pounds frequently and up to 20 pounds occasionally; push and/or pull up to ten pounds frequently; sit for up to six hours in an eight-hour workday; occasionally use her upper extremities to reach, finger, and handle; look up, down, left, right, and leave her head in a static position; and receive a five-minute break every half hour to change positions. T. 14-20.  The ALJ further found that plaintiff

is unable to perform any past relevant work, but considering her age, education, work experience, and RFC, there are a significant number of jobs in the national economy that plaintiff could perform. T. 20-21.

The Appeals Council declined to review the ALJ's decision, and this action ensued. T 1.

**DISCUSSION**

I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the

scope of the Court's review to two inquiries: (1) whether the Commissioner's findings were supported by substantial evidence in the record as a whole and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

Plaintiff, 43 years old at the time of her hearing, testified that she was most recently employed for three years as a mentor for the tutoring service, "EnCompass." T. 35, 37. Her husband is a computer salesman and they have six children from six years to 24 years old. T. 36-37. She had not performed any work since 2011. T. 36.

II. <u>The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence in the Record.</u>

    **A.    The ALJ's RFC assessment.**

Plaintiff contends that remand is warranted because the ALJ's RFC assessment is not based on substantial evidence where the ALJ improperly weighed the medical evidence and failed to fully develop the record. Plaintiff's memorandum of law, p. 15-21. Defendant responds that the ALJ properly considered the opinions of consultative examiner Dr. Toor, nurse practitioner Ms. Wadsworth, and Dr. Whitbeck. Defendant's memorandum of law, p. 23-28.

It is well established that "'[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

4

observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).  In this case, the ALJ's narrative discussion of plaintiff's treating and consultative physicians generally indicates his appropriate consideration of their opinions. Moreover, it is well settled that the ALJ's failure to discuss every part of an opinion does not indicate that such evidence was not considered. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court finds that, upon its review of the record as a whole, the ALJ's RFC assessment is supported by substantial evidence.

In his RFC assessment, the ALJ found that plaintiff was able to perform light work with the aforementioned limitations.  There is no support in the record for plaintiff's contention that the ALJ failed to properly weigh the medical opinions of Ms. Wadsworth, Dr. Toor, Dr. Trounina, and Dr. Whitbeck.  In his decision, the ALJ noted that plaintiff had a history of bilateral carpal tunnel syndrome dating back to 1999.  Following a left wrist surgical decompression in 2000, plaintiff was assessed by Dr. Michael Dunn in 2007 and 2010.  Dr. Dunn noted that plaintiff's symptoms had progressed in those three years, but that her right and left carpal tunnel syndrome was improved from an electrodiagnostic standpoint and may not benefit from carpal tunnel releases on both wrists.

5

Dr. James Maxwell, however, recommended and performed a right carpal tunnel release in 2011, and, within a week, the paresthesias of the right hand were mostly resolved.   Dr. Harbinder Toor performed one examination plaintiff in August 2011 and noted her moderate to severe pain following the right carpal tunnel release two months earlier.   He opined that she had a moderate to severe limitations pushing, pulling, lifting, reaching, and performing a variety of tasks with her right hand and fingers; and mild to moderation limitations grasping, holding, pushing, and pulling with her left hand. He observed that plaintiff's hand and finger dexterity were not intact and that she had difficulty performing a number of actions with her hands and fingers. T. 16-17, 284-285.

With respect to plaintiff's cervicalgia and left upper extremity radicular pain, the ALJ considered Dr. Tomanino's treatment notes, which revealed that by March 2012, plaintiff had moderate tenderness over the left trapezius, but no obvious instability, and physical therapy was recommended.   In July 2012, plaintiff was diagnosed with cervical spine pain, degeneration of the cervical intervertebral disc, spinal stenosis in the cervical region and cervical radiculitis and recommended epidural steroid injections treat her pain.   In August 2012, upon Dr. Tomaino's referral, orthopaedic surgeon Dr. Whitbeck examined and evaluated plaintiff's left shoulder and arm pain and opined that plaintiff's cervical range of motion was reduced by 25-30% in extension and

noted a positive Spurling test for exacerbation of neck pain and palpation tenderness to the papacervical musculature. T. 341. Plaintiff was diagnosed with cervicalgia, cervical radiculopathy, and cervical spondylosis without myelopathy. T. 341. The ALJ concluded that Dr. Whitbeck's examination reflected "some limitations caused by her neck and carpal tunnel syndrome [that were] accounted for" in his RFC assessment. T. 18.

In his assessment, Dr. Whitbeck noted that it was "hard to decipher what is related to her carpal tunnel and what is related more from her neck," and he incorporated the findings of Drs. Tomaino and Dunn. T. 340-342. Dr. Whitbeck concluded that because plaintiff's history of "a multitude of conservative therapy . . . ha[d] not sustained her level of relief," it was a "difficult decision" whether to continue with her conservative treatment or go forward with surgical intervention, an anterior cervical discectomy and fusion at C6-C7. T. 341. He noted that the surgical outcome would be predictable with respect to her arm symptoms, but less so with respect to her neck pain.

In a January 16, 2013 treatment note, Ms. Wadsworth, a family nurse practitioner in Dr. Grannum's office, opined that plaintiff needed "help around the house and for shipping due to her limitations with lifting, pushing, [and] pulling. She [was] able to dress self, feed self, do some cooking, and ha[d] no cognitive deficiencies." T. 360. The ALJ noted that in Ms. Wadsworth's

medical source statement from the same date, she opined that
plaintiff had the following limitations: unable to lift or carry
more than three pounds without pain; sit for five hours with
five minute breaks every 30 minutes during an eight-hour work day;
stand and walk for up to three hours with the ability to change
positions at will; never push, pull, or reach overhead with either
hand; occasionally finger and handle with both hands, frequently
reach and feel with the right hand, and occasionally reach and feel
with the left hand; occasionally operate foot controls with the
right foot and frequently with the left foot; occasionally climb
stairs and ramps, but avoid ladders or scaffolds, balancing,
kneeling or crawling; and occasionally be exposed to extreme
temperatures and humidity and vibrations. T. 18, 381-386.
Ms. Wadsworth further opined that plaintiff's pain would negatively
impact her productivity by "no more than 20-25% on a ('bad day')."
T. 387.  In March 2013, however, Dr. Grannum saw plaintiff for knee
pain complaints, and a physical examination revealed full range of
motion and strength 5/5 bilaterally in plaintiff's neck, spine,
upper extremities, and lower extremities.  Dr. Grannum assessed
plaintiff's stenosis of the spine in the cervical region to be
"stable." T. 359.

Plaintiff was treated at the New York Physical Medicine Center
from December 2011 through 2013 for her bilateral carpal tunnel
syndrome, which stemmed from the 1999 repetitive injury to both

wrists when she was a machine operator at Kodak.   Dr. Trounina noted that plaintiff underwent left and right wrist bilateral carpal tunnel releases in 2006 and 2011, respectively.   Plaintiff continued to report numbness and tingling in both hands with pain medication and the use of splints at night, and she described her pain level as five out of ten in both wrists bilaterally.   In May 2013, Dr. Trounina opined that plaintiff was able to return to work with the following limitations for 90 days: climb stairs and ladders occasionally, lift no more than 20 pounds, no operation of heavy equipment, push and pull up to 20 pounds, occasional simple grasping, and no repetitive movements of bilateral hands and wrists. T. 309.

The ALJ gave some weight to Ms. Wadsworth's opinion, finding that her assessment indicated a less than sedentary level of exertion, which was "not well supported by the overall medical evidence." T. 20.  He also found Mrs. Wadsworth's opinion regarding plaintiff's pain on "bad days" to be "very vague and subjective" and "not supported by any specific medical record or by any of [plaintiff's] doctors," with "no indication of how often" such days occurred.  T. 20.   Contrary to plaintiff's contention that Ms. Wadsworth's opinion was rejected simply because she is not an acceptable medical source, the ALJ specifically stated his reasons, as outlined above, for assigning some weight to her opinion that are unrelated to whether she is an acceptable medical source.   In

light of this finding and the lack of any obvious gaps in the
administrative record during the 12 months preceding plaintiff's
DIB application, the Court rejects plaintiff's related contention
that the ALJ failed to fully develop the record by failing to
contact Dr. Grannum to obtain an acceptable medical source
statement or confirm or deny Ms. Wadsworth's findings. *See Rosa v.
Callahan*, 168 F.3d 72, 79 n.5 (2d Cir.1999); *see also* 20 C.F.R.
§ 404.1512(d).   Moreover, because the record evidence was
sufficient for the ALJ to have made a disability determination, he
was not obligated to seek further medical records.   *See
Martinez-Paulino v. Astrue*, 2012 WL 3564140, *14 (S.D.N.Y. Aug. 20,
2012).

The ALJ gave no weight to Dr. Toor's opinion, finding it to be
"largely inconsistent" with the medical evidence in the record and
because Dr. Toor's examination occurred shortly after plaintiff's
right carpal tunnel release, from which she was still recovering at
the time. T. 20.   In light of this, the ALJ concluded that
Dr. Toor's single examination did not "capture what plaintiff's
capabilities [were] on a regular basis." T. 20.

The Court therefore finds that there is no merit to
plaintiff's contention that the ALJ failed to properly weighed the
opinions of Dr. Toor, Ms. Wadsworth, and Dr. Whitbeck.   As
discussed above, there is ample indication in the ALJ's decision
that he properly considered these opinions and assessed the support

provided by the medical evidence, as a whole, contained elsewhere in the record.  The ALJ assigned great weight to Dr. Trounina's opinion, considering her one-and-a-half year treatment history with plaintiff, which he found put "her in an advantageous position to ascertain [plaintiff's] functional capabilities in performing work activities." T. 19.

Based on the foregoing and a review of the record in its entirety, the Court concludes that the ALJ's RFC assessment is based on substantial evidence.

**B.    The ALJ's credibility finding.**

Plaintiff further contends that remand is required because the ALJ's credibility determination is not supported by substantial evidence. Plaintiff's memorandum of law, p. 21-22.  Defendant responds that substantial evidence supports the ALJ's credibility assessment, which included consideration of plaintiff's decision to continue conservative treatment instead of surgical interventions for her cervical spine impairments.  Defendant's memorandum of law, p. 28-29.

The Court initially finds that the ALJ's discussion of plaintiff's credibility, which incorporates a review of her testimony, indicates that he used the proper standard in assessing credibility. *See Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012).  In his decision, the ALJ expressly followed the two-step credibility analysis and applied 20 C.F.R. § 404.1529 and

SSR 96-7p in assessing plaintiff's credibility. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012).

Here, the ALJ's concluded that plaintiff's self-reports and complaints were not credible concerning the intensity, persistence, and limiting effects of her pain because her reports are inconsistent with, and not supported by, substantial evidence in the record. It is well-established that "[a] patient's report of complaints, or history, is an essential diagnostic tool" (*Green-Younger*, 335 F.3d at 107 [internal quotation marks ommitted]); however, the ALJ's finding here that aside from undergoing carpal tunnel releases in her wrists plaintiff has received treatment that is "essentially routine and/or conservative in nature," is supported by the record evidence. T. 19. Plaintiff's treatment notes reveal that plaintiff symptoms have been primarily managed with pain medication, the avoidance of repetitive movement in her wrists, and physical therapy. The ALJ further noted that plaintiff "informed her doctors that her symptoms improved when she did not perform repetitive actions and rested her wrists." T. 19. It is clearly indicated in the ALJ's decision that he carefully measured plaintiff's complaints concerning the intensity, persistence, and functional limiting effects of her symptoms against the entire record. "An ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of

the claimant's testimony in light of other evidence in the record." *Burnette v. Colvin*, 564 F. App'x 605, 609 (2d Cir. 2014)(summary order). Here, the ALJ acted within his discretion in concluding that plaintiff was less than credible with respect to some of her claims.

**C.   The ALJ's determination at Step 5.**

Plaintiff contends that the ALJ improperly relied on the vocational expert's ("VE") responses to an incomplete hypothetical question that did not fully reflect the extent of plaintiff's physical limitations. Plaintiff's memorandum of law, p. 23. Defendant responds that this contention is based on plaintiff's challenge of the ALJ's RFC assessment and should therefore be denied. Defendant's memorandum of law, p. 29-30. The Court agrees.

The ALJ asked the VE to opine whether there were jobs in the national economy that could be performed by an individual of plaintiff's age, education, and work experience, with the following limitations: lift and carry up to 20 pounds, occasionally use upper extremities for reaching, fingering, and handling, occasionally look down, up, right, and left, occasionally leave her head in a static position; and take a five minute break to change position from sitting every half and hour. T. 52-55. The VE testified that such an individual could perform the semi-skilled sedentary occupation of an information clerk and the light unskilled

13

occupations of photo finishing counter clerk and furniture rental clerk. T. 50-55. Because the Court has found the RFC determination to be supported by substantial evidence, plaintiff's claim that the ALJ's hypothetical questions were based on an erroneous RFC has no merit. *See Burnette*, 564 Fed. App'x at 609.

## **CONCLUSION**

For the foregoing reasons the plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied, and defendant's cross-motion for judgment on the pleadings (Docket No. 8) is granted. The ALJ's decision denying plaintiff's claim for DIB is supported by substantial evidence in the record. Therefore, the complaint is dismissed in its entirety, with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

<u>        S/ MICHAEL A. TELESCA        </u>
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
        February 10, 2016